UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
VERONICA SIVERLS-DUNHAM, individually
and as Proposed Aministratrix of the Estate of
JULIA MARGARET SIVERLS, Deceased,
ALLEN SIVERLS, ROBERT SIVERLS,
STEPHEN SIVERLS, AELEPHIA ANN
GELBER, JAMES SIVERLS, JOHN SIVERLS,
VIRGINA WILSON and RONALD SIVERLS,

                              Plaintiffs,                           05 Civ. 7518 (PKC)

          -against-
                                                                    MEMORANDUM
                                                                    AND ORDER

SEUNG HUEN LEE (a/k/a Grand Master
Seung Huen Lee), et al.,

                              Defendants.
-------------------------------------------------------------x


          Plaintiffs, all living siblings of the decedent, Dr. Julia Siverls-Dunham, Ph.D.,

allege that beginning in December 2001, decedent was actively solicited to join the "Dahn Hak

Cult".  They further allege that, as a direct result of Dr. Siverls-Dunham's association with the

Cult, she was drugged and killed during a hike in the course of a training retreat at the "Dahn

Hak Cult" headquarters in Sedona, Arizona.

          Throughout the complaint and affidavits submitted on this motion, plaintiffs refer

to all defendants jointly, both moving and non-moving, as either the "Dahn Hak Cult" (the

"Cult") or the "Dahn Organization".  The complaint alleges that the corporate and individual

defendants committed certain "wrongful acts" which ultimately lead to the death of plaintiffs'

decedent in Sedona, Arizona in July 2003.  Plaintiffs further allege that defendants mishandled

the decedent's body, causing severe emotional distress.  Plaintiffs assert claims for wrongful

death and for intentional infliction of emotional distress against all defendants.

Defendants Tao Fellowship, Dahn Institute, Inc., Healing Society, Inc., BR

Consulting NJ, Inc., Dahn Center, Inc., Dahn Hak Sun Won Co., Ltd. and Dr. Seung Huen Lee

(individually, "Moving Defendant" and, collectively, the "Moving Defendants" or "Movants")

now move to dismiss all claims against them, asserting, pursuant to Rule 12(b)(2), Fed. R. Civ.

P., that this court lacks personal jurisdiction over them.  Plaintiffs contend that this court has

personal jurisdiction over all Moving Defendants under CPLR § 301 or, alternatively, under

CPLR § 302(a)(1).  For the reasons discussed below, I grant defendants' motions.

I.   PROCEEDINGS IN THIS COURT

The complaint in this action was filed on July 12, 2005 in Supreme Court, Bronx

County, and removed to this court by defendant Mago Earth, Inc. ("Mago") on August 25, 2005

on the basis of diversity jurisdiction. 28 U.S.C. § 1332.  On January 25, 2006, plaintiffs moved to

remand this action to state court citing a lack of unanimity among the defendants in removing the

action.  I denied that motion on February 27, 2006, finding that this non-jurisdictional defect in

removal had been waived by plaintiffs.  See Siverls-Dunham v. Seung Huen Lee, 2006 WL

510504 (S.D.N.Y. Feb. 27, 2006).

At a pretrial conference on March 17, 2006, I granted the plaintiffs leave to

conduct discovery during a 60-day period, limited to the factual basis for personal jurisdiction

over the defendants.  Pursuant to the requests of counsel, I extended the period for jurisdictional

discovery until August 4, 2006.  Following the close of the jurisdictional discovery period, the

Moving Defendants filed their motions to dismiss for lack of personal jurisdiction.

On October 12, 2006, defendant Bell Rock Development Co., an Arizona corporation which is authorized to do business in New York, withdrew its motion to dismiss with permission of this court.  According to an affidavit submitted on behalf of defendant Bell Rock, it has merged with Dahn Meditation, Inc. and Dahn Meditation, Inc. is no longer an independent corporate entity. (Kong Aff. ¶ 3)  Dahn Center Sedona is another name under which non-movant Bell Rock does business. (Kong Aff. ¶ 4)  Defendant Dahn L.L.C. was dismissed with prejudice on February 23, 2006 as having been improperly and fraudulently joined by plaintiffs. (2/23/06 Order)  All claims against Dahn Hak Sun Won Co., a Korean corporation, were discontinued with prejudice on August 28, 2006 by stipulation of the parties. (4/28/06 Order)  In addition, the court notes that defendants John Doe (1), (2) and (3) have never been served with the complaint and the one-hundred and twenty day period, set forth in Rule 4(m), Fed. R. Civ. P, has expired. Accordingly, the Doe defendants are dismissed.[1]

## II.  BACKGROUND

### A.  The Complaint

According to plaintiffs' complaint, the "Dahn Hak Cult" is comprised of "several multinational for-profit and non-profit business entities and organizations" which include, but are not limited to, the organizations named as defendants in this action.  (Cmpl. ¶ 3)  The complaint alleges that the individual defendant in this action, Seung Huen Lee, is the founder, leader and controller of the Cult. (Cmpl. ¶ 11)  Plaintiffs assert that the Cult poses as a South Korean Dahn Yoga exercise program, employing meditation and spiritual retreat, which is based on the

---

[1] Defendant Dahn Meditation Church, Inc., d/b/a Dahn Meditation Institute, Inc., has not moved to dismiss. Although it appears that Dahn Meditation Church was served with the summons and complaint, it was neither served with the removal papers when this case was removed from state court nor with any papers relating to this motion.  The corporation's current status in this litigation is therefore unclear.  Plaintiffs are directed to inform this court of its position with respect to Dahn Meditation Church within ten days hereof or it will be deemed dismissed without prejudice.

philosophy and beliefs of Dr. Lee. (Cmpl. ¶ 3)  There are now over seventy Dahn Hak Yoga

centers in the United States, eleven of which were operating in New York at the time plaintiffs'

cause of action arose.

Plaintiffs allege that the Cult recruits new members through advertisements and

word-of-mouth solicitation by existing members, and that new members are "lured in" with free

Dahn Yoga classes after which they are "pressured to take private Dahn Hak lessons and drink

spiritual tea that Defendants lace with drugs."  (Cmpl. ¶¶ 7, 9)  Student recruits are also allegedly

pressured to attend expensive lectures and training seminars, some of which are in Sedona,

Arizona, at which they are "drugged, exploited for money and brain-washed" by Cult leaders.

(Cmpl. ¶¶ 6, 9-10)  Plaintiffs contend that it is during one of these training seminars that

decedent died.

Dr. Siverls-Dunham was a resident of New York and a Professor in the

Department of Social Sciences at Queensborough Community College in Queens, New York.

(Cmpl. ¶ 44)  A sufferer of chronic back pain, decedent practiced yoga, used holistic remedies

and watched her diet. (Cmpl. ¶ 57)  Plaintiffs allege that decedent was solicited by the Cult

when she enrolled in yoga classes at the Queens Dan Hak Center in December 2001. (Cmpl. ¶

58)  Plaintiffs further allege that as a result of her involvement with the Queens Dahn Hak

Center, Dr. Siverls-Dunham was pressured to enroll in yoga retreats, including an advanced

retreat at the Dahn Hak Sedona Center. (Cmpl. ¶ 62)  During this retreat, plaintiffs contend that

Dr. Siverls-Dunham and others had their food laced with drugs, including marijuana and

methadone, and were pressured to take part in difficult and dangerous rituals and tests to prove

their devotion to the Cult and to achieve the stature of Dahn Hak "Master". (Cmpl. ¶¶ 63, 64)

While plaintiffs allege that defendants were generally responsible for leading these activities, it is

unclear from the face of the complaint who, among the defendants, is alleged to have been in charge.  One of the activities allegedly lead by defendants was a hike through the Arizona desert which took place on July 12, 2003.  Dr. Siverls-Dunham is alleged to have collapsed during the hike and died of dehydration and exposure. (Cmpl. ¶ 95)

    B.  Evidence on this Motion

        Based, in part, upon evidence developed during the jurisdictional discovery period, plaintiffs have submitted affidavits in opposition to the Moving Defendants' motions.  Plaintiffs' description of the operation and structure of the "Dahn Organization" is heavily reliant on the affidavit of Robert Rueb.  Rueb was employed by non-movant Bell Rock at two New York Dahn Yoga Centers, the Woodside Dahn Center and later the Syosset Dahn Center, as a yoga instructor, "healer" and "Master". (Rueb Aff. ¶¶ 1, 49)  Rueb was on the hike in July 2003 when Dr. Siverls-Dunham died and his affidavit is descriptive of that event.  There is no sworn assertion, either in Rueb's two-hundred and thirteen paragraph affidavit or elsewhere, that Rueb and Dr. Siverls-Dunham had met prior to their arrival in Arizona or that Dr. Siverls-Dunham ever confided in Rueb or explained her motivation for traveling from New York to Arizona.  While plaintiffs also submit the affidavits of Veronica Siverls-Dunham and Robert Siverls-Dunham, both siblings of the decedent, those affidavits are not informative on the subject of personal jurisdiction.  The affidavit of Veronica Siverls-Dunham describes her experience collecting the decedent's car and personal belongings.  Robert Siverls-Dunham's affidavit describes his trip to Sedona, Arizona to recover decedent's body.  Both affidavits also discuss the decedent's intention to give up all of her "worldly possessions".

        According to Rueb's affidavit, the Cult is run by Dr. Lee from his headquarters in Sedona, Arizona (the "Sedona Retreat").  The Cult is purportedly a "family business" and Dr.

5

Lee acknowledged during his testimony that Moving Defendant BR Consulting employs Dr.
Lee's son who is also the sole owner of non-movant Mago Earth. (Lee Dep. at 28-29)

      In addition to the involvement of Dr. Lee's family, persons who plaintiffs
characterize as Dr. Lee's "disciples" run many of the defendant companies, including Moving
Defendants Tao Fellowship and Dahn Institute, both of which are not-for-profit Arizona
corporations.  Tao Fellowship is a religious charity which runs seminars teaching "Tao Healing"
at the Sedona Retreat. (Rueb Aff. ¶ 17, Exh. 4)  While it is unclear how Tao Fellowship raises
much of its revenue or how it uses the charitable donations it receives, plaintiffs do identify one
source of the Fellowship's income as contributions from employees of non-movant Bell Rock
who Rueb asserts are required to donate a percentage of their salaries to Tao Fellowship during
monthly "ritualistic ceremonies." (Rueb Aff. ¶¶ 19-20)  Bell Rock employs students who have
progressed through the "Dahn Organization's" Dahn Master training program. (Rueb Aff. ¶ 101)
Tao Fellowship also publishes a newsletter read by persons in New York and elsewhere. (Rueb
Aff. ¶¶ 156-65)  Dahn Institute, which shares a mailing address with the Sedona Retreat, is a
corporation that runs many of the training courses and seminars promoting the "Dahn
Organization's" "values". (Rueb Aff. ¶¶ 18, 55)

      In addition to the seminars run by Tao Fellowship and Dahn Institute, plaintiffs
also rely upon certificates issued by "Dahn Center" at the completion of workshops conducted in
New York. (Rueb Aff. Exh. 12)  It is unclear, however, whether "Dahn Center" is Moving
Defendant Dahn Center, Inc. as opposed to the aggregate of all Dahn yoga centers in New York
which plaintiffs refer to as "the New York Dahn Centers".  Payments for all seminars run by any
defendant were made directly to the organization conducting the seminar rather than to a central
entity. (Rueb Aff. ¶ 58, Exhs. 4, 13)  Other than the publication of a newsletter on Dahn "beliefs"

and "practices" and the allegation that it is the "primary publishing arm" of the Cult, the plaintiffs do not attempt to demonstrate how Moving Defendant Healing Society, Inc. is related to plaintiffs' cause of action. (Cmpl. ¶ 27; Rueb Aff. ¶¶ 138-55)


III. <u>DISCUSSION</u>

       "Motions to dismiss under Rule 12(b)(2) may, in part, test plaintiff's theory of jurisdiction and, in part, test the facts supporting the jurisdictional theory." <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 153 (2d Cir. 1999).  On a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction. <u>See</u> <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  However, the nature of "the plaintiff's obligation varies depending on the procedural posture of the litigation." <u>Ball v. Metallergie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990), <u>cert. denied</u>, 498 U.S. 854 (1990).  Prior to discovery, a plaintiff may defeat a Rule 12(b)(2) motion "by making a prima facie demonstration of jurisdiction through its own affidavits and supporting materials." <u>Jazini v. Nissan Motor Co., Ltd.</u>, 148 F.3d 181, 184 (2d Cir. 1998) (quotation omitted).  Where, as here, "'the parties have conducted extensive discovery regarding the defendant's contacts with the forum state, but no evidentiary hearing has been held-'the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant.'" <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999)(citations omitted).  No party has argued that an evidentiary hearing is needed to resolve this motion.  A plaintiff after discovery "cannot rely merely on conclusory statements or allegations" to defeat a motion to dismiss for lack of

personal jurisdiction; rather, "the prima facie showing must be factually supported." <u>Melnick v. Adelson-Melnick</u>, 346 F.Supp.2d 499, 502 & n.17 (S.D.N.Y. 2004) (citing <u>Ball</u>, 902 F.2d at 197). Because the question of lack of personal jurisdiction is "inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion." <u>St. Paul Fire and Marine Ins. Co. v. Eliahu Ins. Co.</u>, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997), <u>aff'd</u>, 152 F.3d 920 (2d Cir. 1997).

In order to determine whether there is a basis to exercise personal jurisdiction over a defendant, a district court is required to apply a two part analysis. <u>See</u> <u>Bank Brussels Lambert</u>, 171 F.3d at 784. First, a court sitting in diversity will look to the law of the forum state, here New York, to determine whether there is jurisdiction over the defendant. <u>Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996). Second, the court "must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." <u>Bank Brussels Lambert</u>, 171 F.3d at 784. Due process "requires that a defendant have enough minimum contacts with the forum state so that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " <u>PDK Labs., Inc. v. Friedlander</u>, 103 F.3d 1105, 1110 (2d Cir. 1997) (quoting <u>International Shoe v. Washington</u>, 326 U.S. 310, 316 (1945)). In the due process analysis, it is noted that New York's long-arm statute, "does not confer jurisdiction in every case where it is constitutionally permissible." <u>Kreutter v. McFadden Oil Corp.</u>, 71 N.Y.2d 460, 471 (1988) (citations omitted). Here, plaintiffs contend that this court has general personal jurisdiction under CPLR § 301 and specific personal jurisdiction over defendants under CPLR § 302(a)(1). Because I conclude that this court does

not have jurisdiction under either CPLR § 301 or § 302(a)(1), I need not reach the due process analysis.

Plaintiffs bear the burden of establishing a factual and legal basis for personal jurisdiction. Accordingly, in deciding this motion, I have considered only those theories and arguments that plaintiffs have advanced. I conclude that plaintiffs have failed to demonstrate a basis for personal jurisdiction over the Moving Defendants.

A. <u>The Moving Defendants Do Not Have Sufficient Contacts to Establish Jurisdiction under CPLR § 301</u>

As set forth below, under New York law, a court may exercise jurisdiction over a foreign defendant where the defendant is "doing business" in New York on a continuous and systematic basis. Further, a court may exercise jurisdiction over a foreign entity where there is a departmental or agency relationship between a defendant present in the forum and the foreign entity or individual. Alternatively, where the corporate veil of a corporation subject to jurisdiction is pierced, a court arguably may exercise jurisdiction over a foreign person or entity.

1. <u>The "Doing Business" Test</u>

New York courts have interpreted section 301 to permit the exercise of general jurisdiction where a foreign corporation is "engaged in such a continuous and systematic course of 'doing business' here [in NY] as to warrant a finding of its 'presence' in this jurisdiction". <u>Simonson v. Int'l Bank</u>, 14 N.Y.2d 281, 285 (1965). Infrequent or occasional contacts are insufficient to provide a basis of general jurisdiction. <u>Tauza v. Susquehanna Coal Corp.</u>, 220 N.Y. 259, 267 (1917). In analyzing whether a defendant has sufficient contacts with the forum to permit section 301 jurisdiction, courts look at a number of factors, including the existence of an office in New York, the solicitation of business in New York, the presence of bank accounts

or other property in New York, and the presence of employees or agents in New York. See Frummer v. Hilton Hotels Int'l., Inc., 19 N.Y.2d 533, 537 (1967).  However, "mere solicitation" in New York by a seller of goods or supplier of services is insufficient to constitute doing business in the forum for purposes of section 301; instead, there must be "activities of substance in addition to solicitation." Laufer v. Ostrow, 55 N.Y.2d 305, 310 (1982).

Here, plaintiffs do not assert that any one of the Moving Defendants, considered in isolation, has sufficient contacts with New York such that he or it may be said to be present for purposes of section 301.  In the affidavits submitted with the Movants' papers, all entity Moving Defendants have submitted sworn statements that they are not authorized to do business in New York and do not maintain offices or employees in New York.  While in New York during the jurisdictional discovery period, an agent for Movant Tao Fellowship made minor withdrawals from a bank account opened in Arizona. (See Oh Aff. at ¶ 9, Exh. 1)  Mere presence, however, of a bank account, even one opened and maintained, in New York, is insufficient to establish jurisdiction. See Fremay v. Modern Plastic Mach. Corp., 15 A.D.2d 235, 241 (1st Dept. 1961).  Plaintiffs also make much of the fact that Mr. Rueb asserts that he received solicitations in New York from Moving Defendant Dahn Institute, Inc., as well as promotional newsletters produced by Tao Fellowship and Healing Society.  Crediting Mr. Rueb's affidavit, the distribution of such promotional materials would constitute solicitation, but "[s]olicitation of business alone will not justify a finding of corporate presence in New York with respect to a foreign manufacturer or purveyor of services."  Laufer, 55 N.Y.2d at 305. Moreover, even if the actions of the "New York Dahn Centers" in distributing promotional materials "may constitute something more than mere solicitation . . . [they] are still not enough to

support jurisdiction" under CPLR § 301. <u>See</u> <u>Holness v. Mar. Overseas Corp.</u>, 251 A.D.2d 220, 222 (1st Dept. 1998).

   Further, there is no basis on which this court may exercise jurisdiction over Dr. Lee under CPLR § 301.  Plaintiffs' contention that Dr. Lee may be subject to jurisdiction by virtue of his association with the "Dahn Organization" which operated in New York is without basis in fact or law.  As a general rule, an individual cannot be subject to personal jurisdiction in New York unless he is physically present in New York at the time of service, is a domiciliary of New York or consents to jurisdiction. <u>See</u> <u>Rawstorne v. Maguire</u>, 265 N.Y. 204, 208-09 (1935). The continuous and systematic presence of a corporate officer may have bearing on the presence of the corporation under the "doing business" test, but it does not render the officer, himself, present. <u>See</u> <u>Laufer</u>, 55 N.Y.2d at 313.  As to individuals, however, the New York Court of Appeals has not determined whether the "doing business" test is applicable and the courts of the Appellate Division have reached different conclusions. <u>Compare</u> <u>Abkco Indus. v. Lennon</u>, 52 A.D.2d 435, 439-40 (1st Dept. 1976) (applying the "doing business" test to an individual), <u>with</u> <u>Nilsa B.B. v. Blackwell H.</u>, 84 A.D.2d 295, 304-05 (2d Dept. 1981) (declining to apply the "doing business" test to an individual).

   Here, even assuming that the "doing business test" applies to an individual, there is an insufficient factual basis on which to exercise jurisdiction.  Dr. Lee testified that he was present in New York on three or fewer occasions to deliver speeches or give seminars during the period preceding service of the complaint, January 1, 2002 through December 31, 2005. (Lee Dep. at 70)  Even if the plaintiffs are correct that Dr. Lee was in New York on four occasions, this type of infrequent contact with the forum does not render Dr. Lee present under the "doing business" test. <u>See</u> <u>Presidential Realty Corp. v. Michael Square West, Ltd.</u>, 44 N.Y.2d 672, 674

(1978) (noting that "physical presence alone cannot talismanically transform any and all business dealings into business transactions under CPLR 302 (subd. (a), par. (1)") (citing McKee Elec. Co. v. Rauland-Borg Corp., 20 N.Y.2d 377 (1967)).

      2.   "Departmental" Theory

Jurisdiction may be exercised over a foreign corporation under section 301 where the foreign entity is a mere department of an entity present in New York or the entity present in New York is a mere department of the foreign entity. See, e.g., Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd., 15 N.Y.2d 97 (1965) (jurisdiction over parent where subsidiary present in New York); Motown Record Co., LP v. iMesh.com, Inc., 2004 WL 503720 (S.D.N.Y. March 12, 2004) (jurisdiction over subsidiary when parent present in New York).  In order to determine whether one entity is a department of another, courts will look to a number of factors, the most fundamental of which is common ownership. See, e.g., Delagi v. Volkswagenwerk A.G., 29 N.Y.2d 426 (1972).  Although jurisdiction has been found in circumstances "other than classic parent-subsidiary relationship, nearly identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes." Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F .2d 117, 120 (2d Cir. 1984).

Plaintiffs assert in both their complaint and the papers submitted in opposition to this motion that all defendants are operated as a common enterprise and are, therefore, subject to jurisdiction in New York.  In support of this statement, and as sole support for their section 301 argument, plaintiffs cite an "unpublished disposition" of a New York trial court, Donetto v. S.A.R.I. De Gestion Pierre Cardin, 3 Misc.3d 1106(A) (Sup. Ct., N.Y. County 2004), holding that there is jurisdiction over a foreign parent corporation where a wholly-owned subsidiary operated in New York.  Plaintiffs then go on to contend that the evidence submitted demonstrates

that defendants are all one organization controlled out of Arizona by Dr. Lee and, because it is uncontested that there is jurisdiction over one component of that organization, non-movant defendant Bell Rock, there is jurisdiction over all Moving Defendants.  Plaintiffs' theory falls short on all fronts.  Plaintiffs' citation to Donetto and reliance upon departmental theory is fundamentally misplaced.  Further, plaintiffs have failed to provide evidentiary support for their assertion that Movants are a common enterprise or for the fundamental requirement that there is common ownership or control over all defendants.

Plaintiffs' allegation that the Moving Defendants are a single entity is not supported by the evidence submitted in opposition to this motion.  Plaintiffs' argument, totaling less than two pages, is that "the documents and testimony demonstrate[] that Defendants have operated as an integrated business enterprise, controlled from the Dahn Headquarters at the Sedona Dahn Retreat." (Pl. Mem. at 15-16)  Rueb's lengthy affidavit provides a detailed narrative of his experience as a yoga instructor with the "Dahn Organization".  Rueb states that he "has always thought of the Dahn Yoga centers that are located in New York, and throughout the United States, the Dahn training workshops, the *New Human School*, Chakra seminars, forums, *Shim-Sung* weekend, Tao Fellowship, Dahn Institute, Bell Rock, BR Consulting, CGI Holistic Fitness, and Dahn Healer School at the Sedona Dahn Retreat in Arizona as an integrated business enterprise". (Rueb Aff. ¶ 5)

Despite over four and a half months of jurisdictional discovery, plaintiffs have submitted no documentary or testimonial evidence, other than the subjective view of Mr. Rueb, from which this court could properly conclude that all defendants operate as an integrated enterprise.  The only evidence of any "Dahn Organization" hierarchy is a flowchart from a website which plaintiffs fail to connect to any of the Moving Defendants. (See Rueb Aff. at ¶

144, Exh. 36)  Although the Rueb affidavit asserts that the "Dahn Organization" "maintained

exclusive intranet websites", Rueb Aff. ¶ 166, there is no evidence, despite the generous

discovery period, tying any of the Moving Defendants to the operation of the website.  Further,

while Rueb maintains that personnel changes are made by "Dahn Headquarters" and cites a

personnel order purportedly reflecting this connection, Rueb Aff. ¶ 27, Exh. 5, there is no

evidence, other then Rueb's conclusory opinions, connecting "Dahn Headquarters" with any of

the Moving Defendants.

> Plaintiffs also point to an incident in which Rueb was given an application at his
New York Dahn center for a seminar held in Arizona and conducted by Moving Defendant Dahn
Institute.  The application included a waiver of liability on the part of "Dahn Center/Bell Rock
Company/Dahn Institute". (See Rueb Aff. ¶¶ 53-59)  The issue on this motion is not whether
there is an affiliation or common economic interest between or among any of the defendants but
whether the purposefully activities of any defendant is sufficient under the departmental, agency
or other theories to subject it or him to jurisdiction in New York.  The distribution of applications
or promotional materials may indicate a relationship between independent entities for mutual
benefit but it does not, standing alone, establish a jurisdictional predicate. See, e.g., Miller v.
Surf Props., 4 N.Y.2d 475 (1958)(finding no jurisdiction over a foreign supplier of travel
services where an independent agency in New York solicited orders in New York for the foreign
defendant).  Under New York law, "the presence of a local corporation does not create
jurisdiction over a related, but independently managed, foreign corporation." Volkswagenwerk,
751 F.2d at 120 (citing Delagi, 29 N.Y.2d at 426).

> Plaintiffs' allegations of common ownership or control over the "Dahn
Organization" for purposes of the departmental theory of jurisdiction are not factually supported.

Although plaintiffs assert, in a conclusory manner, that Dr. Lee is the *de facto* leader of the "Dahn Organization", they fail to offer any facts which, if credited as true, demonstrate that there is common ownership, analogous to a parent-subsidiary relationship, over the Moving Defendants.  As noted previously, New York requires "nearly identical ownership interests" for the departmental theory to apply. Beech Aircraft Corp., 751 F.2d at 120.  In lieu of such evidence, plaintiffs argue that the defendants are under common control.  However, the New York Court of Appeals "has never held a foreign corporation present on the basis of control, unless there was in existence at least a parent-subsidiary relationship."  Delagi, 29 N.Y.2d at 432. Moreover, plaintiffs have failed to come forward with an adequate factual basis to establish common control of the Movants.  While Dahn Yoga is founded upon principals and beliefs articulated by Dr. Lee and he is therefore doubtlessly influential over the Moving Defendants, influence is not control.  As evidence of control over the Movants, Mr. Rueb recounts four workshops or forums within the relevant period that he attended where Dr. Lee was a speaker. (Rueb Aff. ¶¶ 106, 111, 118, 121)  Mr. Rueb alleges, in a conclusory manner, that one of these events was organized by the "Dahn Organization" but does not state which, if any, of the Moving Defendants were involved. (Rueb Aff. ¶ 111)  He also states that Dr. Lee addressed three workshops that he attended in Sedona which were allegedly run by Moving Defendant Dahn Institute.  None of these allegations, however, demonstrate that Dr. Lee is in control of any of the Moving Defendants.

While plaintiffs' complaint alleges "on information and belief" that Dr. Lee is the either the principal owner or an officer and/or a member of the Moving Defendants' governing boards is, with the exception of BR Consulting ("BRC"), contradicted by Dr. Lee's affidavit and deposition testimony. (See Lee Aff. at ¶ 9, Lee Dep. at 54-66, 69-70)  There is no evidence that

there has been less than full compliance with all requisite corporate formalities on the part of all Moving Defendants.  On the basis of the facts submitted by plaintiffs on this motion, the departmental theory does not provide a basis for personal jurisdiction over the Moving Defendants.

>3.   Piercing the Corporate Veil of Movant BRC

Plaintiffs state that Dr. Lee and Moving Defendant BRC are a single entity, as Dr. Lee was President and majority shareholder of BRC, (see Cmpl.¶ 31), and that the corporate veil of BRC should therefore be pierced.  Plaintiffs have not made a factual showing sufficient to pierce the corporate veil between Dr. Lee and BRC.

Piercing the corporate veil requires more than domination by an individual over a corporation. See Lowendahl v. Baltimore & Ohio R. R. Co., 247 A.D. 144, 157 (1st Dept. 1936), aff'd, 272 NY 360 (1936); American Protein Corp. v. AB Volvo, 844 F.2d 56, 60 (2d Cir 1988), cert. denied, 488 U.S. 852 (1988).  Under New York law, the party seeking to pierce the veil of a corporation must "make a two part showing:  (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993).  Control is the key in a piercing analysis.  The parent must exercise complete domination "in respect to the transaction attacked" and such domination must have been used to "commit fraud or wrong" against plaintiff, which proximately caused plaintiff's injury. Lowendahl, 247 A.D. at 157.  In order to determine whether to pierce the corporate veil, courts consider "1) the absence of the formalities which are part and parcel of normal corporate existence, i.e., the issuance of stock, the election of directors, the keeping of corporate records, etc., 2) inadequate capitalization, 3) personal use

of corporate funds, and 4) the perpetration of fraud by means of the corporate vehicle." Walter E. Heller & Co. v. Video Innovations, Inc., 720 F.2d 50, 54 (2d Cir. 1984)(citing Bartle v. Finkelstein, 19 A.D.2d 256, 260-62 (4th Dept. 1963)). Here, there is no evidence that any corporate formalities have been disregarded, BRC is undercapitalizaed, Dr. Lee has ever utilized BRC's corporate funds for personal use or BRC has committed a fraud.

Even if the corporate veil between BRC and Dr. Lee were to be pierced, it would not create a basis for personal jurisdiction over BRC or Dr. Lee. BRC is not a New York corporation nor is it authorized to do business in New York. (See Shin Aff. ¶¶ 3, 8) It is not present in New York for purposes of CPLR § 301 and, as discussed infra, plaintiffs' cause of action does not arise out of a transaction of business with BRC, CPLR § 302(a)(1). Given that this court could not exercise jurisdiction over BRC, piercing the corporate veil would not permit this court to exercise jurisdiction over Dr. Lee. As such, veil piercing is an inadequate legal theory to support jurisdiction whether regarded as an independent basis for jurisdiction under CPLR § 301 or as support for application of departmental theory.

    4.  Agency

Jurisdiction may also be exercised under CPLR § 301 where there is an agency relationship between the foreign defendant and the other entity or person that is subject to jurisdiction in New York. See Frummer, 19 N.Y.2d at 537-38. Unlike the departmental theory, no formal organizational relationship is required for a court to exercise jurisdiction over a foreign corporation under agency theory. However, there must still be an agent-principal relationship. See Sterling Novelty Corp. v. Frank & Hirsch Distrib. Co., 299 N.Y. 208 (1949). "Agency is a legal concept that depends on the existence of three elements: (1) 'the manifestation by the principal that the agent shall act for him'; (2) 'the agent's acceptance of the undertaking'; and (3)

'the understanding of the parties that the principal is to be in control of the undertaking.'"
Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006) (emphasis omitted) (quoting
Cabrera v. Jakabovitz, 24 F.3d 372, 387 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).

       The facts submitted on this motion do not support the exercise of jurisdiction over
any of the Moving Defendants under an agency theory.  Although plaintiffs have not explicitly
pled that there is an agency relationship between the Movants and a principal, many of their
allegations in both the complaint and in their papers submitted to the court on this motion
suggests that agency is implicitly asserted.  Neither the Rueb affidavit nor plaintiffs' complaint
distinguishes between the roles of entities within the "Dahn Organization". (See, e.g., Rueb Aff.
¶¶ 4, 6, 11, 32, 47, 88, 111)  Here, the record before me does not permit a finding of an agency
relationship.

    B.  <u>Plaintiffs Have Hailed to Establish Personal Jurisdiction Under CPLR § 302(a)(1)</u>

       Plaintiffs also assert that this court may exercise jurisdiction over all defendants
under CPLR § 302(a)(1).  CPLR § 302(a)(1) permits a court to exercise jurisdiction over a
foreign defendant where a cause of action arises from any act enumerated in the statute,
including where a defendant "in person or through an agent: 1. transacts any business within the
state or contracts anywhere to supply goods or services in the state. . . ." N.Y. C.P.L.R. §
302(a)(1) (McKinney 2001).  To maintain personal jurisdiction over a nondomiciliary defendant
under this provision, the defendant must transact business in New York and the claim against the
defendant must arise out of the underlying business activity. See Agency Rent A Car, 98 F.3d at
29.  In evaluating whether a plaintiff has made the requisite showing, courts require that a
defendant's activities be purposeful and that there exists an "articulable nexus" between the
transacted business and the cause of action on which suit is brought. See McGowan v. Smith, 52

N.Y.2d 268, 272 (2005); see also Kreutter, 71 N.Y.2d at 467 ("[O]ne transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.").

Here, plaintiffs have failed to come forward with facts which, if proven, establish jurisdiction over defendants under CPLR § 302(a)(1).  Plaintiffs contend that the "Dahn Organization," and, therefore, the Moving Defendants, engaged in a long string of activities, beginning in December 2001 when Dr. Siverls-Dunham entered a New York Dahn Center, which culminated in Dr. Siverls-Dunahm's death in Arizona in 2003.  However, under the law of New York, "a defendant may not be subject to personal jurisdiction under CPLR § 302(a)(1) simply because her contact with New York was a link in a chain of events giving rise to the cause of action." Talbot v. Johnson Newspaper Corp., 123 A.D.2d 147, 149 (3d Dept. 1987), aff'd, 71 N.Y.2d 827 (1988).  None of the evidence submitted by plaintiffs, including Rueb's affidavit, connects a transaction of business by Movants in New York to the circumstances leading to Dr. Siverls-Dunham's death, except in vague and conclusory terms.

Other than being part of the alleged "Dahn Organization" and therefore allegedly transacting business in New York in the aggregate, there is no factually demonstrated relationship between defendants BR Consulting, Healing Society, Dahn Center, Inc. and Dr. Siverls-Dunham.  As to defendant Dahn Institute, Inc., it appears, from the exhibits submitted in connection to Veronica Siverls-Dunham's affidavit, that Dahn Institute was responsible for running and organizing seminars attended by Dr. Siverls-Dunham. (Siverls-Dunham Aff. Exh.11)  While Mr. Rueb swears that he was given solicitations by his New York Dahn center on behalf of Dahn Institute, it is clear that "mere solicitation of business within the state does not

constitute the transaction of business within the state" absent some other New York-directed

activities. O'Brien v. Hackensack Univ. Med. Ctr., 305 A.D.2d 199, 201 (1st Dept. 2003).  There

is no evidence that Rueb ever spoke to Dr. Siverls-Dunham about her experience at the New

York Dahn Center she attended and, thus, is not in a position to state what caused her to attend.

According to Rueb, the President of Movant Tao Fellowship, Byuk Woon, ran the

Dahn Master training seminar at which Dr. Siverls-Dunham died but he is not a named defendant

and there are no assertions of direct involvement by Tao Fellowship itself. (Rueb Aff. ¶ 72, Exh.

17)  Moreover, it is uncontested that the seminar at which Dr. Siverls-Dunham died was

conducted by a non-New York entity and held at a facility allegedly owned or controlled by non-

movant Bell Rock in Arizona.  Other than the fact that Dr. Siverls-Dunham, a New Yorker,

attended the seminar, there is no evidence of a connection between the Dahn Master training

program, any Moving Defendant and New York.  Plaintiffs have failed to come forward with

evidence of any other New York directed activities on the part of Moving Defendants BR

Consulting, Healing Society, Dahn Center, Inc., Dahn Institute, Inc. and Tao Fellowship.

Plaintiffs do endeavor to connect Dr. Lee to New York and to Dr. Siverls-

Dunham by relying on Mr. Rueb's statements that many individuals who attended New York

Dahn Centers also attended speeches given by Dr. Lee in New York (on the three or possible

four occasions that he was present in New York). (Rueb Aff. ¶¶ 104, 111)  Assuming that these

lectures or forums would constitute a transition of business for purposes of CPLR § 302(a)(1),

there is no evidence that Dr. Siverls-Dunham attended any of these lectures.  The only evidence

plaintiffs have presented of any contact between Dr. Lee and Dr. Siverls-Dunham is a group

photograph taken in Sedona, Arizona, the night before Dr. Siverls-Dunham's death. (See Rueb

Aff. ¶ 190, Exh. 44)  While indicative that Dr. Lee and Dr. Siverls-Dunham did meet, the

photograph is not probative of a New York nexus.  Further, both Mr. Rueb's affidavit and

plaintiffs' moving papers also erroneously suggest that Dr. Lee should be subject to jurisdiction

in New York because the "Dahn Organization" "transacts business" in New York. Cf. Peterson

v. Farrakhan, 2006 WL 1722362, *5 (N.D. Ind. June 22, 2006) (finding no jurisdiction over

defendant under Illinois long-arm statute where plaintiffs did not maintain that defendant

conducted business in state but "attempt[ed] to graft the business of the Nation of Islam [in the

forum] onto Minister Farrakhan individually because of Minister Farrakhan's position as the

spiritual leader of the religion.").  Plaintiffs fail to connect any transaction of business by Dr. Lee

to plaintiffs' causes of action.  There is no evidence that Dr. Siverls-Dunham's death, or even her

presence in Arizona, arose out of a transaction of business by Dr. Lee or any other Moving

Defendant in New York.

      Additionally, even assuming that the Moving Defendants did advertise in New

York, that Dr. Lee occasionally visited the state to deliver speeches attended by "members" of

New York Dahn centers and that those speeches resulted in increased enrollment or interest in

Dahn centers, there is an insufficient basis to establish the cause of action arose from any

purposeful activity by a Moving Defendant in the forum. See, e.g., Appicella v. Valley Forge

Military Acad., 103 A.D.2d 151 (2d Dept. 1984)(finding no jurisdiction where plaintiff was

injured in Pennsylvania but foreign defendant advertised in New York on a regular basis,

recruited players for the school's football team in New York and even interviewed students for

the school in New York.); Dromond v. Great Am. Recreation, Inc., 116 F.Supp.2d 368, 373

(E.D.N.Y. 2004)(finding that "[i]njuries resulting from recreational activities held outside the

New York State, but advertised within the state have regularly been found to bear 'too remote a

relationship to the advertising and contractual activity claimed to be the transaction of business

in the state to warrant a conclusion that the injuries arose from the in-state activity.'" (citation omitted); <u>Wisselman v. Mount Snow Ltd.</u>, 524 F.Supp. 78 (E.D.N.Y. 1981) (declining to exercise jurisdiction over a Vermont corporation which advertised, bought materials, and sent agents into New York).

IV. <u>CONCLUSION</u>

    The motions of defendants Tao Fellowship, Dahn Institute, Inc., Healing Society, Inc., BR Consulting NJ, Inc., Dahn Center, Inc., Dahn Hak Sun Won Co., Ltd. and Mr. Seung Huen Lee, to dismiss, pursuant to Rule 12(b)(2), are GRANTED.

    SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
    November 13, 2006